IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN WILLIE MADDOX, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. |
| v. | ) | 3:19cv916-WKW-CSC |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

John Willie Maddox, Jr. is before the court with his motion to vacate, set aside, or

correct sentence under 28 U.S.C. § 2255. Doc. 1.[1] For the reasons discussed below, the

court recommends that Maddox's motion be denied without an evidentiary hearing and that

this case be dismissed with prejudice.

## I.   BACKGROUND

On May 11, 2018, Maddox pled guilty to one count of conspiracy to possess with

intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 846

(Count 1); two counts of aiding and abetting the possession with intent to distribute

controlled substances, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2 (Counts 5 and

6); one count of possession of a firearm to further a drug trafficking crime, in violation of

---

[1] References to documents filed in these proceedings are designated as "Doc." References to
documents filed in Maddox's underlying criminal case (Case No. 3:17cr223) are designated as
"Crim. Doc." Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing
system and may not correspond to pagination on the copies as presented for filing.

18 U.S.C. § 924(c)(1)(a)(i) (Count 8); and aiding and abetting the unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b), 18 U.S.C. § 2 (Count 25).[2] Doc. 14-2. The plea agreement contained a waiver provision in which Maddox waived his right to appeal or collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct. Doc. 14-1 at 9. On November 30, 2018, the district court sentenced Maddox to 170 months' imprisonment. Doc. 14-4. Maddox did not appeal.

On November 20, 2019, Maddox filed this § 2255 motion presenting the following claims:

1.   Counsel was ineffective for failing to file various "important motions that could have been favorable to the defense."

2.   Counsel was ineffective for failing to inform Maddox of a "valuable defense."

3.   Counsel was ineffective for failing to challenge the drug amount attributed to Maddox.

4.   Counsel rendered ineffective assistance in various ways during the plea bargaining process.

5.   Counsel was ineffective for failing to challenge the "credibility of the informant."

6.   Maddox did not engage in conduct amounting to a conspiracy, and his counsel was ineffective for failing to explain the elements of conspiracy to him.

---

[2] Maddox was indicted with 18 other defendants on charges related to the operation of a largescale drug ring dealing in various controlled substances including crack and powder cocaine, marijuana, Xanax, and MDMA (commonly called "Molly"). *See* Crim. Doc. 174.

7.    Maddox was not in possession of the firearm and drugs underlying the
      § 924(c) count, and his counsel was ineffective for failing to explain
      constructive possession to him.

Doc. 1 at 4–11, 16–33; *see* Doc. 18-1 at 5.

## II.    DISCUSSION

### A.    Legal Standard

A prisoner may have relief under § 2255 when the trial court imposes a sentence

that: (1) violates the Constitution or laws of the United States; (2) exceeds its jurisdiction;

(3) exceeds the maximum authorized by law; or (4) is otherwise subject to collateral attack.

*See* 28 U.S.C. § 2255. *See also McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th

Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional

rights and for that narrow compass of other injury that could not have been raised in direct

appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United*

*States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court determines that

a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall

discharge the prisoner or resentence him or grant a new trial or correct the sentence as may

appear appropriate." 28 U.S.C. § 2255(b). The burden to establish that vacatur of a

conviction or sentence is required falls upon the prisoner. *Beeman v. United States*, 871

F.3d 1215, 1221–22 (11th Cir. 2017).

### B.    Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated under the two-part test

announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show

that "counsel's representation fell below an objective standard of reasonableness." *Id*. at

689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See also Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

Under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus exclusively on the underlying outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). However, "[u]nreliability or unfairness does not result if the ineffectiveness

of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372.

Unless a petitioner satisfies the showings required under both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Thus, if a court decides that one of the requisite showings has not been made, it need not examine the other. *Id*. at 697; *Duren v. Hopper,* 161 F.3d 655, 660 (11th Cir. 1998).

### 1.    *Counsel's Failure to File Various Motions*

Maddox claims his counsel was ineffective for failing to file various "important motions that could have been favorable to the defense." Doc. 1 at 4.

According to Maddox, his counsel should have filed suppression motions, including a motion challenging the government's wiretaps, a motion to sever, and a motion challenging a search warrant. Doc. 1 at 14, 16–17. He also says he was not provided with discovery material. *Id*. The only ground Maddox suggests in support of these motions, and then only in reference to seeking a severance, is that a "codefendant's defense included prejudicial character evidence regarding the defendant." *Id*. at 16. But Maddox does not specify the prejudicial character evidence he alludes to, and, through his cursory allegations, he demonstrates no likelihood that a motion to sever would have been successful. Thus, he fails to prove his counsel was ineffective for failing to file a motion to sever.[3]

---

[3] As a general rule, defendants who are jointly indicted should be tried together. *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989); *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976). This is particularly true in conspiracy cases, where charges against multiple defendants

Addressing Maddox's claim that he neglected to file "important motions,"

Maddox's former counsel[4] states:

> [T]he undersigned explained to Mr. Maddox on numerous occasions that he did not have grounds to file a motion to suppress regarding the wiretaps. That after researching the issues and reviewing the affidavits provided to attain the wiretap, that the Government and its agents had properly attained the wiretap in accordance with federal law and any motion challenging the wiretap would be frivolous and without merit. (It should be noted that other defendants did challenge the wiretap warrants and all of those motions were denied.) Insofar as the motion for severance, the undersigned also researched the same and determined that no valid grounds existed to warrant a request for severance. Mr. Maddox was advised on this and did not object at the time to the undersigned explaining he would not file a motion for severance. As to the motion to suppress the search warrant, I explained to Mr. Maddox that the search warrant was for the residence of another individual and that he was only captured on tape at the residence with drugs and firearms. I explained to Mr. Maddox that he lacked standing to challenge the search of the residence as it was not his residence. I further explained to Mr. Maddox that the search warrant for his residence and storage unit was lawfully obtained after a review of the discovery and Mr. Maddox did not have valid grounds to challenge said search of the residence and/or the storage unit. Further, Mr. Maddox was provided copies of discovery relating to him at the Montgomery County Jail, and the undersigned has received no further requests for discovery from Mr. Maddox.

---

may be proven with substantially the same evidence. *United States v. Dorsey*, 819 F.2d 1055, 1058 (11th Cir. 1987). Severance is only justified when a defendant can show prejudice from which the trial court cannot provide adequate protection. *Dorsey*, 819 F.2d at 1058; *Morrow*, 537 F.2d at 136. That a defendant may suffer some prejudice is not enough to justify severance, as a degree of prejudice is inherent in joint trials. *United States v. Harris*, 908 F.2d 728, 736 (11th Cir. 1990). A defendant's allegations of prejudice must be balanced against the interest of judicial economy and concomitant policy favoring joint trials in conspiracy cases. *United States v. Kopituk*, 690 F.2d 1289, 1318 (11th Cir. 1982). Here, Maddox fails to show that his counsel's decision not to pursue the severance issue was professionally unreasonable. And he demonstrates no reasonable likelihood that further pursuit of a severance would have succeeded. Failing to demonstrate deficient performance or prejudice, he is entitled to no relief on this claim.

[4] Under the court's orders, Maddox's former counsel, J. Carlton Taylor, filed an affidavit addressing Maddox's allegations of ineffective assistance of counsel. *See* Docs. 2, 11.

Doc. 11 at 2.

A defendant alleging that his counsel was ineffective for failing to move to suppress evidence must demonstrate that, if made, the suppression motion would have been meritorious, and the result of the proceeding would likely have been different. *United States v. Matos*, 905 F.2d 30, 33 (2d Cir. 1990). *See also, e.g., DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (defendant alleging ineffective assistance for failure to file motion most show that motion had merit). Maddox's cursory allegations fail to establish any prejudice stemming from his counsel's failure to move to suppress evidence. Maddox also fails to show that counsel's actions were professionally unreasonable. With specific regard to the government's wiretaps, before Maddox pled guilty, there had been a judicial finding—denial by the district court of the suppression motions of several of Maddox's coconspirators—that the applications for Title III wiretaps satisfied the requirements of 18 U.S.C. § 2518(1)(c). *See* Crim. Docs. 351, 619. It was professionally reasonable for Maddox's counsel to decide that any pursuit by Maddox of the suppression issue regarding the wiretaps would have been equally unsuccessful as his coconspirators' pursuit of the same issue. Maddox presents nothing to undermine the judicial finding regarding the legality of the government's wiretaps. Nor does he allege any facts demonstrating a reasonable likelihood that, had his counsel argued for suppression of the wiretaps, litigation of that issue would have resulted in an outcome favorable to him. Because he fails to establish deficient performance by his counsel or any resulting prejudice, he is entitled to no relief on this claim.

Finally, regarding Maddox's assertion that he was not provided with discovery material, Maddox indicates no specific evidence that he was not given, and he does not explain how he was prejudiced. His former counsel avers that Maddox was provided with copies of discovery material. Doc. 11 at 2. Maddox's cursory assertions here fail to establish deficient performance by his counsel or any resulting prejudice. Thus, this claim entitles him to no relief.

### 2.    Counsel's Failure to Inform Maddox of Valuable Defense

Maddox next claims that his counsel was ineffective for failing to "inform defendant of [a] valuable defense" before allowing him to plead guilty to the charges against him. Doc. 1 at 5, 18–19.

In making this claim, Maddox does little more than list a string of complaints against his counsel, unsupported by facts or arguments. Maddox lists the following grievances:

> 1. Failure to send an investigator, 2. Worked against his client's interests, 3. Attorney-client relationship no longer viable, 4. Claims of off-the-record promises must be resolved, 5. Failure to notify the court when differences arise between defendant and counsel, 6. Failure to make an objection specifically requested by the defendant, 7. Ineffective representation at sentencing, 8. Failure to listen to the defendant's version of the case, 9. Last minute appointment of counsel.

Doc. 1 at 5. These cursory assertions are inadequate to establish deficient performance by Maddox's counsel or any resulting prejudice. Addressing these assertions, his former counsel states:

> In Ground Two of Mr. Maddox's complaint, he is correct that the undersigned did not obtain the services of an investigator, and there were no defenses which required an independent investigation [ ]. The undersigned further avers that at no time did he work against his client's interest but instead continued to make every effort to not only determine if a trial would

8

be successful but also to continue to negotiate the best possible plea agreement for Mr. Maddox. At no time did I feel there was a breakdown in the attorney-client relationship and therefore I did not feel the need to inform the court of any such breakdown. Further, the undersigned made no "off the record" promises to Mr. Maddox and all agreements were encompassed in the plea agreement. Further the undersigned did make objections on behalf of Mr. Maddox and argued the same to the best of his ability at the sentencing hearing.

Doc. 11 at 3.

As to the heading of Maddox's claim, Maddox does not clearly identify the "valuable defense" he was not informed of by his counsel, except to suggest that counsel was ineffective for not advising him about a "believability defense." Doc. 18 at 2. Maddox does not explain what a believability defense is, much less establish how such a defense was viable in his case. Failing to establish deficient performance by counsel and resulting prejudice, Maddox is entitled to no relief here.[5]

### 3. Counsel's Failure to Challenge Attributed Drug Amount

Maddox claims his counsel was ineffective for failing to challenge the drug amount attributed to him as relevant conduct under the sentencing guidelines. Doc. 1 at 7, 20–21, 33.

Maddox's claim is factually incorrect, as his counsel did object to the presentence investigation report ("PSR")'s calculation of his sentencing guideline level based upon the attributable drug amount set forth in the PSR. Doc. 16-1 at 27. Based on this objection,

---

[5] Maddox asserts elsewhere under the heading of this claim that his counsel failed to give him a copy of the indictment. Doc. 1 at 18. However, at his change of plea hearing, he affirmed under oath that he had seen a copy of the indictment and that he and his counsel had reviewed the indictment and his case in general. Doc. 14-2 at 3.

counsel succeeded in convincing the government—and the district court—to reduce the drug amount attributable to Maddox, so that Maddox's base offense level was reduced to 30, down from level 32 as originally calculated in the PSR. Doc. 14-4 at 4; *see* Doc. 16-1 at 18. In his § 2255 motion, Maddox neither demonstrates that the drug amount ultimately attributed to him was erroneous nor identifies a plausible argument or evidence that his counsel should have presented that was reasonably likely to result in a lower amount of drugs being attributed to him under the guidelines. He fails to show that his counsel's performance was deficient or that he was prejudiced by any allegedly deficient performance. Consequently, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 4.    *Counsel's Ineffectiveness During Plea Bargaining*

Maddox claims his counsel rendered ineffective assistance in various ways during the plea bargaining process. Doc. 1 at 8, 22–24.

As with other claims in his § 2255 motion, Maddox does little more here than list a string of conclusory complaints against his counsel, unsupported by facts or arguments. He cursorily asserts that his counsel was ineffective for:

> 1. Rushing into plea without investigation, 2. Improper pressure on defendant to plead guilty, 3. Failure to accurately calculate federal sentencing guidelines, 4. When advising defendant as to plea offer [sic], 5. Failure to fully explore plea possibilities, 6. Lying to the defendant, 7. Failure to give defendant a copy of the plea offer, 8. Misrepresentation of material facts, 9. Claims of off-the-record promises must be resolved, 10. Unprofessional errors at sentencing, 11. Failure to investigate or prepare for sentencing, 12. Failure to argue for a reduction in base offense level, 13. Failure to explain the risk and benefits of a plea offer.

Doc. 1 at 8.

Addressing these assertions, Maddox's former counsel states:

> In Ground Four, Mr. Maddox argues that he was rushed into a plea agreement. However plea negotiations went back and forth with the Government over several months before the final plea agreement was reached. Mr. Maddox in fact turned down more favorable plea offers in lieu of the plea agreement he eventually signed against the advice of counsel. The undersigned further avers that he never lied or misrepresented any facts to Mr. Maddox and that Mr. Maddox was provided a copy of the plea agreement for his review every time one was presented. At all times during the plea negotiation process, Mr. Maddox was made aware of all plea offers made by the Government. Mr. Maddox effectively refused all offers with the exception of the last offer which was negotiated with the Government at his request and on his behalf. At all times, Mr. Maddox was made aware of his right to proceed to trial and challenge the evidence. Further, at all times, Mr. Maddox was made aware of the potential enhancements that were expected to be in his presentence investigation report prepared by U.S. Probation.

Doc. 11 at 3–4.

The vague and unsupported allegations against counsel made by Maddox in his § 2255 motion are inadequate to sustain his claim of ineffective assistance of counsel. Maddox does not explain what further investigation his counsel should have conducted. He does not elaborate on how he was pressured into pleading guilty, a claim contrary to his statements made under oath at his change of plea hearing (*see* Doc. 14-2 at 4). He identifies no error in his counsel's calculation or explanation of his possible guideline sentence. He demonstrates no deficiencies in his counsel's exploration of other "plea possibilities" or establish that there was a written plea offer he was not given. He does not explain how his counsel lied or misrepresented material facts to him, and he identifies no off-the-record promises made to him by his counsel. He points to no unprofessional errors by counsel at sentencing, and does not show that counsel failed to investigate or prepare for sentencing. He incorrectly alleges that counsel did not argue for a reduction in his base

offense level. And his claim that counsel failed to explain "the risk and benefits of a plea offer" is vague and conclusory, and, with respect to the plea offer he accepted, it is contradicted by his sworn statements at the change of plea hearing (*see* Doc. 14-2 at 3–4). Consequently, Maddox is entitled to no relief on his claim that his counsel rendered ineffective assistance during the plea bargaining process.

### 5.       *Counsel's Failure to Challenge Informant's Credibility*

Maddox says his counsel was ineffective for failing to challenge the "credibility of the informant." Doc. 1 at 9. He then lists the following matters, without elaboration: "1. Co-defendant background, 2. Co-defendant prior statements, 3. Notice of alibi and disclosure of informants, 4. Failure to impeach witness, 5. Hearsay evidence." *Id*. Elsewhere in his motion, under the heading of this same claim, Maddox appears to make arguments regarding the standard for admissibility of coconspirator statements at trial and the government's duty to disclose impeachment information regarding its witnesses. *Id*. at 25.

It is not clear what Maddox is getting at by this claim. In responding to the claim, the government's counsel states:

> As best as the undersigned can tell concerning this claim, Maddox is unhappy with the way evidence from co-defendant Marquis Miller was handled by his attorney and by the court. However, [neither] Marquis Miller nor anyone else for that matter testified against Maddox at his sentencing hearing. Although the Government referenced Marquis Miller's proffer statements regarding Maddox's drug distribution amounts, (*See* [Doc. 14-4] at 11), there is no evidence that the sentencing judge even considered anything Marquis Miller may have previously stated in fashioning Maddox's sentence. Regardless, Maddox's attorney did make an argument to the court that Marquis Miller's previous testimony was not credible. *See Id*. at 12

Doc. 14 at 19.

For his part, Maddox's former counsel addresses Maddox's claim as follows: "Mr. Maddox argues credibility of an informant in Ground 5. However the credibility of an informant would have been a trial issue had this matter went before a jury." Doc. 11 at 4.

Maddox chose to plead guilty rather than proceed to trial, where he might have been able to challenge any statements by Miller (or by other coconspirators) offered into evidence as coconspirator statements made to further the conspiracy. Maddox's counsel did challenge Miller's credibility at sentencing, insofar as Miller may have made statements regarding the amount of cocaine Maddox sold. Maddox fails to show that his counsel's actions in this regard were not objectively reasonable or that he was prejudiced by any allegedly deficient performance by counsel. Consequently, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 6.     *Conduct Amounting to Conspiracy*

According to Maddox, he did not engage in conduct that amounted to a conspiracy. Doc. 1 at 10, 26–27. Relatedly, he suggests that his counsel was ineffective because he "never clearly broke down the meaning of conspiracy," leaving Maddox to "figure [it] out himself." Doc. 18-1 at 5.

To the extent Maddox presents the substantive claim that his conduct did not amount to involvement in a conspiracy, his claim is, as argued by the government, barred by the waiver provision in his plea agreement. Maddox's written plea agreement contained the following waiver provision:

**DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK**

> Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. The defendant further expressly waives the right to appeal the conviction and sentence on any other ground, including upward departures or variances, and waives the right to attack the conviction and sentence in any post-conviction proceeding, including § 2255 motions. This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct. . . .

Doc. 14-1 at 8.

An appeal waiver or collateral-attack waiver is valid if entered knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350–55 (11th Cir. 1993). To enforce such a waiver, the government must demonstrate either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert*, 997 F.2d at 1351.

The transcript of Maddox's change of plea hearing shows that the magistrate judge questioned him about the waiver provision in his plea agreement and confirmed, through Maddox's affirmative answer, that Maddox understood he was waiving his rights to later challenge his conviction and sentence (whether by appeal or collateral attack) except on grounds of ineffective assistance of counsel and prosecutorial misconduct. Doc. 14-2 at 9–10. Thus, the record shows that Maddox's waiver of his collateral-attack right was knowing and voluntary. *Bushert*, 997 F.2d at 1351. Consequently, Maddox's substantive claim that his conduct did not amount to involvement in a conspiracy is barred by the waiver.

14

Regarding his insinuation that his counsel was ineffective for failing to "clearly br[eak] down the meaning of conspiracy," Maddox does not say what he did not understand about the legal definition of conspiracy. Moreover, Maddox appears to concede that he understood the definition of conspiracy when he states he "had to figure [it] out himself." Doc. 18-1at 5. Also, during the change of plea hearing, the magistrate judge explained the definition of conspiracy to Maddox, and Maddox affirmed under oath that he understood this definition. The transcript reflects this exchange:

> THE COURT: Mr. Maddox, to obtain a conviction of you at trial, the government would have to show several things, all beyond a reasonable doubt and by competent evidence. With respect to Count 1 [the conspiracy count], they would have to show that you and at least one other person in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as set out in the indictment. And the common and unlawful plan set out in the indictment was the possession and possession with intent to distribute powder cocaine or cocaine hydrochloride, what's commonly called powder cocaine; and that you knowingly—that is, being fully aware and understanding—and agreeing to the unlawful purpose of the plan, willfully joined in the plan. Willfully means to do something not by way of mistake or accident, but purposing to try to assist in some way or manner to bring about the fruition of whatever the plan was, and in this instance, the possession and possession with intent to distribute powder cocaine. And do you understand what the government would have to prove beyond a reasonable doubt and by competent evidence to obtain a conviction of you as to Count 1?
>
> THE DEFENDANT: Yes, sir.

Doc. 14-2 at 11–12.

Elsewhere at the change of plea hearing, the following exchange occurred:

> THE COURT: With respect to Count 1, Mr. Maddox, did you and some of the other persons listed in the indictment and maybe some people who are not listed in the indictment have a plan wherein you and they would, in some way or manner, possess and possess with intent to distribute powder cocaine?

15

THE DEFENDANT: Yes, sir.

THE COURT: And when you and these other people came up with this plan, did you do so knowingly and willfully; that is, not by way of mistake or accident, but you understood fully that that was the nature of the plan?

THE DEFENDANT: Yes, sir.

THE COURT: And did you willfully—that is, purposefully—join in that plan on at least one occasion?

THE DEFENDANT: Yes, sir.

THE COURT: And was the purpose of the plan to, in some way or manner, bring about the distribution of 500 grams or more of powder cocaine?

THE DEFENDANT: Yes, sir.

THE COURT: And did you, in some way or manner, come up with this plan in either Lee County, Alabama, or Montgomery County, Alabama?

THE DEFENDANT: Yes, sir.

Doc. 14-2 at 14–15.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Maddox presents nothing to overcome the strong presumption of truthfulness in his averments at the change of plea hearing that he understood the meaning of conspiracy and that he in fact participated in a conspiracy. Finally, Maddox does not claim he would not have pled guilty to the conspiracy count, and instead would have opted to go to trial, had

his counsel fully explained the definition of conspiracy to him. A petitioner alleging ineffective assistance of counsel in the context of a guilty plea must, to show prejudice, establish a reasonable probability that, but for counsel's alleged errors, he would have pled not guilty and insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). On this record, Maddox demonstrates no prejudice arising from his counsel's alleged failure to explain the definition of conspiracy to him. Therefore, Maddox is entitled to no relief on this claim of ineffective assistance of counsel.

### 7.      *Possession of Firearm and Drugs*

Maddox claims he didn't possess the firearm and drugs underlying the § 924(c) count (Doc. 1 at 11, 28–29), and he also suggests that his counsel was ineffective for failing to explain the meaning of "constructive possession" to him before allowing him to plead guilty (Doc. 18-1 at 5).

To the extent Maddox presents the substantive claim that he didn't possess the firearm and drugs underlying the § 924(c) count, this claim—like his substantive claim denying involvement in a conspiracy—is barred by the waiver provision in his plea agreement. At the change of plea hearing, the magistrate judge questioned Maddox about the waiver provision, and Maddox affirmed that he understood he was waiving his rights to later challenge his conviction and sentence by appeal or collateral attack. Doc. 14-2 at 9–10. Thus, Maddox's waiver of his collateral-attack rights was knowing and voluntary. *Bushert*, 997 F.2d at 1351.

As for his contention that his counsel was ineffective for failing to explain the meaning of constructive possession to him, Maddox does not say what he did not

17

understand about this legal concept. Nor does he explain how having a fuller understanding

of the concept would have affected the outcome of the proceedings. For his part, Maddox's

former counsel avers that "Mr. Maddox was explained the law regarding actual and

constructive possession prior to entering the guilty plea." Doc. 11 at 4. At the change of

plea hearing, Maddox affirmed under oath that he engaged in conduct that met the elements

of the § 924(c) charge. The transcript reflects the following exchange:

> THE COURT: Mr. Maddox, on that same day, April the 22nd of 2017,
> did you also have in your possession during those two crimes that you just
> mentioned—that is, the possession with intent to distribute cocaine and
> marijuana—also have in your possession or did another person assisting you
> have in their possession a firearm?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you have that firearm knowingly and
> intentionally; that is, not by way of mistake or accident, but you fully
> understood that you had a firearm and you intended to possess it?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And that was so that in the event that somebody tried
> to rob you of either your cocaine or the proceeds of the cocaine or marijuana,
> so that you could protect yourself or the proceeds of the transaction?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And that was done in Lee County, Alabama, as well?
>
> THE DEFENDANT: Yes, sir.

Doc. 14-2 at 17.

Maddox does not explain how having a fuller understanding of constructive

possession would have led him to plead differently. Finally, and significantly, he does not

claim he would not have pled guilty to the § 924(c) count, and instead would have insisted

on going to trial, had his counsel better explained the meaning of constructive possession to him. *See Hill*, 474 U.S. at 58. On this record, Maddox demonstrates no prejudice arising from his counsel's alleged failure to explain constructive possession. Therefore, he is entitled to no relief on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

It is the RECOMMENDATION of the Magistrate Judge that Maddox's § 2255 motion be DENIED and that this case DISMISSED with prejudice.

It is further ORDERED that by **October 13, 2022**, the parties may file written objections to this Recommendation. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a *de novo* determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 29th day of September, 2022.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE